## Lessee of Dulany and Wife and Dangerfield *vs.* Edward Tilghman.—*June,* 1834.

The legislature has the power to confirm conveyances defectively executed; and acts for that purpose must be carried into effect. The intention of the legislature to confirm a deed must be collected from the nature of the application made to them, and the terms they have used in granting the confirmation.

Where an act of the legislature limiting an estate in real property is inconsistent with the estate granted in a deed, it cannot be relied upon as curing a mere informality in its execution, but must be held to create a new estate.

It is competent for the legislature upon the request of parties, owners of real property, to limit and vest their estates as they desire, or as they could do by deed.

Where a deed of settlement was defectively executed, and the legislature upon the application of the grantors made another settlement, the first deed is not affected by the subsequent legislative general acts intended to cure deeds defectively executed. Such a deed is not embraced by the spirit or intention of those healing acts.

Appeal from *Kent* county court.

Ejectment for one moiety of a tract of land called "*Bennett's Lowe,*" commenced by the appellants against the appellee, on the 6th of September, 1830.

The cause came before the county court, upon a case stated, by which it appeared, that *Henry Rozier*, and *Eleanor* his wife, were seized of sundry lands, that is to say,— *Rozier* of two tracts, called "*Aquonsick,*" and "*Aquonsick Enlarged,*" and his wife of the moiety of a tract called "*Bennett's Lowe,*" the subject of the present action ; that *Rozier* and wife had issue the following children,—*Notley Rozier* their eldest son, *Henry, Edward,* and *Thomas W. Rozier,* and that on the 19th of September, 1759, they executed a deed to one *Edward Neale,* the father of *Eleanor Rozier,* of the said lands in trust, that he should hold the same for the term of twenty-one years, to the use of *Henry Rozier,* one of the grantors; and after the expiration of the said term, that the tracts called "*Aquonsick*" and "*Aquonsick Enlarged,*" should enure to the use of *Henry Rozier,*

one of the sons of the grantors, his heirs and assigns, for ever ; and that the moiety of the tract called " *Bennett's Lowe,*" should in like manner, after the said term, be held for the use of *Edward,* another of the sons of the grantors ; but in case either of the said grantees should die before attaining the age of twenty-one years, then and in that case, the land of the party so dying first, to be held in fee for the use of *Thomas W. Rozier,* the fourth son of the said grantors ; with a covenant that the grantor, *Mary Rozier,* during his life, should be entitled to enjoy the rents and profits of the lands, &c." This deed, though operative with respect to the lands of the husband, was not good to pass the land of the wife, in consequence of a defect in the acknowledgement. It was further agreed, that *Edward Rozier,* one of the sons of the grantors, died without issue, under the age of twenty-one years, in the life-time of his brothers *Henry* and *Thomas W. Rozier,* and that *Henry* died intestate, and without issue, having attained the age of twenty-one. That *Thomas W. Rozier* survived his brother *Henry* and *Edward,* and died intestate in 1785, leaving issue an only daughter, *Eleanor Martha Rozier,* his heir at law, who intermarried with *Matthew Tilghman* in *January,* 1802, and died in *February,* 1803. That *Henry Rozier* and *Eleanor,* his wife, the grantors in the deed, died, the former in 1802, and the latter in 1798. That on the 21st of May, 1787, the legislature, upon the petition of the grantors in the before mentioned deed, and others, passed " an act for vesting an estate for life in *Henry Rozier,* and estates in fee simple in *Eleanor Rozier,* the daughter of *Thomas W. Rozier,* deceased, and in the heirs of *Notley Rozier,* son of the said *Henry Rozier,* in sundry lands therein mentioned." See *ch.* 19 of the acts of April session, 1787. It was further agreed, that the deed required by this law, to be executed by *Henry Rozier,* under the direction of the chancellor, was so executed on the 14th of September, 1790, in favour of the heirs of *Notley Rozier.* Many other facts appear in the statement of the case, but it is not consi-

dered necessary to recapitulate them, as the right of the lessors of the plaintiff to recover was conceded on both sides, to depend upon whether *Eleanor M. Rozier*, the daughter of *Thomas W.* and *Eleanor Rozier*, took under the deed of the 19th of September, 1759, or under the act of the legislature of 1787. If under the deed, the lessors were admitted to be the heirs at law of the person last seized, she in that case taking by descent from her father, *Thomas W. Rozier*. If on the contrary, she took under the act of 1787, she was in by purchase, and the plaintiffs are not the heirs at law, and consequently not entitled to recover."

The county court, upon the preceding statement, gave a *pro. forma* judgment for the defendant, from which the plaintiffs prosecuted the present appeal.

The cause was argued before STEPHEN, ARCHER and DORSEY, J's.

*Chambers* for the appellants.

It is not controverted, nor can it be, that the limitations in the deed of 1759 created a springing or shifting use, which in the event of *Edward Rozier's* death, without issue, and under the age of twenty-one, (which the statement admits) vested the fee in " *Bennett's Lowe*" in *Thomas W. Rozier*, had the deed been acknowledged according to the act of assembly. But it is contended that the acknowledgment is defective.

Let it be assumed that the acknowledgment was defective. Did not the act of 1787 pass to give effect to the settlement? The language of the act is,—" This assembly thinking it just and reasonable that the settlement intended to be made by the said *Henry Rozier*, the father, and *Eleanor*, his wife, as a provision for their children should take effect, any informality in the said deed notwithstanding.

The settlement to which the act was to give effect, was the settlement of 1759. The children whose intended pro-

vision should be secured according to the design of their parents, were the children of *Henry Rozier*, the elder, of whom *Thomas W. Rozier* was one.   The act, therefore, was intended to be confirmatory of the deed, not destructive of it.   All its details accord with the idea of setting up and establishing the deed and securing the title under it, and according to its terms.   The land is given in fee to the daughter of *Thomas W. Rozier ;* dower is secured to· the widow of *Thomas W. Rozier*, precisely as she would have received it under the deed.   Certainly such a stipulation consists only with the idea of giving efficacy to the deed. The act of assembly is in strict accordance with the principle familiar in the legislation of *Maryland* and other states in the union, if it be intended to cure a defective execution of the deed, and thereby give effect to a contract which good faith and conscience require to be executed.   Such laws have been recognized in numerous instances in *Maryland*, whether in relation to individual cases, or to cases in whole classes.   The same decision has been obtained elsewhere.   *Barnett vs. Barnett*, 15 *Serg. and Rawl.* 72.

But to assume that the legislature intended not to give a remedy, but to seize upon a vested right by a sheer act of arbitrary power, and confer an original title upon another, is to claim for the legislature an authority which it is denied they possess under the constitution of *Maryland*. *Meginnis and Crane* is a late decision of this court, founded on this principle.   In *Isaac Austin vs. Trustees of the University of Pennsylvania*, 1 *Yeates*, 260 ; also cited in *Wharton's Digest*, 111,—such a law was declared unconstitutional in *Pennsylvania*.   See also *Vanhorne's lessee vs. Dorrance*, 2 *Dal.* 364.   Such a law is contrary to the principles of natural justice, and in violation of any just principle on which legislative authority can be founded. *Jackson vs. Lyon*, 9 *Cowen's Reports*, 664, and the cases there cited show, that in *New York* the courts have decided the legislature has no power to pass such laws as *divest* the

title of one to *invest* it in another. The same doctrine will be found in 15 *Mass. Rep.* 454. 16 *Mass. Rep.* 270. 3 *Story's Com.* 268. 2 *Peters' Rep.* 629.

To assume, therefore, that the act of assembly was intended to act originally upon the title, regardless of the deed, and directly to convey by the authority of the legislature to *Eleanor M. Rozier,* a title which belonged to other persons, is to impute to those who made it, a high-handed exercise of power, not lawfully possessed by them, and to place the court under the necessity of repudiating the act as altogether without constitutional warrant, and this too, without necessity; because by considering it as a confirmation of the deed of 1759, its enactments are warranted by those principles on which, in this State and elsewhere, statutes to carry into effect the true intent and meaning of contracting parties, by curing and relieving defects either in the expressions used, supplying other expressions, or in the want of formalities in the execution or acknowledgment, have been considered perfectly constitutional.

It is but common charity and courtesy then to assume, that the act of 1787 was remedial and curative, and intended to accomplish that which its language and details purport—to confirm the deed of settlement in specie—and that whatever the parties took, they should take under the settlement as redintegrated and confirmed.

There is nothing to justify the idea that the legislature intended to give a new title or an original estate. Whence did the legislature derive a title which they could transfer? The State clearly had none—it claimed none. As a grant of a new title or estate, it was obviously useless and unnecessary to ask the intervention of the legislature, inasmuch as the title remained in *Henry Rozier,* the elder, and *Eleanor,* his wife, in right of the wife, if their deed did not convey it, and being in them, they could have conveyed it according to their will and pleasure, and with much less trouble and expense, than they must necessarily encounter

in obtaining an act of assembly, and then going through a Chancery proceeding, and after all, executing a deed by *Henry Rozier*. But upon the hypothesis of curing the defect in the deed, all this trouble and expense was necessary, the act of assembly alone being competent to give effect specifically to the deed of settlement.

The possession has been in strict pursuance to the deed of settlement. From 1759 to 1787 there was no pretence of any other title. The case expressly states, that *Henry Rozier*, from the time of *Edward Neale's* death, in 1760, remained in possession until 1792, when he conveyed his life estate to *Eleanor M. Rozier*. And the possession of *Eleanor M. Rozier* and those claiming under the deed since then, is admitted. The act of assembly having been passed to confirm the deed of settlement and give effect to it, did not create an adverse interest which was held and claimed by those in possession, but precisely the reverse; it quieted the possession of those holding under the deed.

It is remarkable that the act of assembly concludes by an expression, importing that the heirs of *Notley Rozier* held the moiety of " *Bennett's Lowe*." This must allude to the moiety of the tract conveyed, or intended to be conveyed in the deed of settlement, because the other moiety of the tract had been in the partition, prior to 1759, conveyed to *Notley Young* and wife, and has continually, for that time, been in possession of that family.

Now it is certain, that if the deed was so defective that it did not pass the title of *Mrs. Rozier*, the grantor, then *Notley Rozier's* heirs had not a shadow of title ; and as to possession, all idea of it is excluded, whether we look to the provisions of the deed or those of the act of assembly, and as above stated, the facts agreed on expressly negative it. The circumstance, therefore, evinces the necessity of regarding the general object and peculiar intention of the act, rather than the precise words which, in some part of it, indicate a grant or conveyance of a new estate. Such a

construction is also in accordance with well established principles of law, which require the whole proceeding,—deed, petition, and act, to be considered as one transaction, and to receive effect according to the design and intent of the parties.

The act of 1787 being therefore intended to remedy any defect or informality, either in the language of the deed of settlement, or in the mode of acknowledging it, the effect was to give full effect and operation to the deed, as a valid and operative instrument, competent to pass the estate in the lands according to the intention of the parties.

The act relates back to the deed, and gives it force and vigour, from 1759. 1 *Price*, 381. *Attorney General vs. Pougett*, cited 2 *Harr. Dig.* 509. An act passed to correct an error in a former statute of the same session, relates back to the time when the first act passed, and may be read as a part of it, and incorporated in it.

When a deed is acknowledged, it is valid by relation back to the time of its execution. *Cox's Dig.* 7, *case* 5. *Wood vs. Owings*, 1 *Cranch*, 239. Where there are divers acts concurrent to make a conveyance, estate, or other thing, the original act shall be preferred, and to this the other acts shall have relation. *Vin. Abrid. Tit. Relation*, 290. *Harper vs. Bailiff of Derby*, cited and approved. 3 *Cowen's Rep.* 80, where is also cited the case of *Jackson vs. Bull*, 1 *Johns. Cases*, 81. A deed executed in pursuance of a previous contract for the same premises, is good by relation from the time of making the contract, so as to render valid every intermediate sale or disposition by the grantees. The principal case in *Cowen* decides, that the deed of the sheriff related back to, and was to be considered as executed at the time of the sale, four years or more previous to the date of the deed.

There are numerous instances in the *Maryland* Reports of decisions upon deeds, the defects of which, and particularly in the acknowledgment, have been remedied by acts of assembly ; and in all has been considered as made valid

and operative from its date, and not from the time of passing the remedial law. All those deeds which by the acts of 1807 and 1809 are made operative to pass the title, notwithstanding their defective acknowledgment, undoubtedly take effect from the time of execution. Does not a particular law, remedying a defect in a particular deed, produce precisely the same effect in regard to that deed that these general laws do in regard to deeds generally?

If it be objected, that in these general laws there are words expressly enacting that the deeds shall operate and be valid from the time of their execution respectively, the answer is, that no form of words is essential to confirm a deed.

The *English* doctrine is, that the deed of a *feme covert* is void, and not voidable only, and yet in *Goodright vs. Straphan, Cowp.* 201, the court decided that the re-delivery of a deed by *feme*, after death of baron, was a sufficient confirmation without re-execution, and that circumstances alone were equivalent to a re-delivery, though the deed was a joint one of baron and feme. A deed recorded by decree of the Chancellor has effect from its date. 1 *Harr. and Johns.* 180.

The parties who would have derived title under the deed of settlement, had no defect existed, have held continually under the deed. That possession has continued from 1759, the date of the deed, until the death of *Matthew Tilghman*, the last person entitled. No adverse claim has ever been enforced. Admit, if you please, that in 1787 a purchase of peace was effected through the instrumentality of the act of assembly, and the proceedings under it. Still this was to secure a continued holding under the deed, and it was secured, and the holding was accordingly under the deed. Can it be said that this attempt to quiet the title under the deed will prevent the holders under it from being relieved by the general quieting acts of 1807 and 1809?

*Henry Rozier* conveyed lands to the heirs of *Notley*

*Rozier*, and these heirs received the lands thus conveyed, and accepted them as one inducement to forbear prosecuting their supposed title to the lands now claimed. And this is a sort of bargain by which *Henry Rozier* bought their title. All this may be urged. To see whether it presents any substantial objection to the plaintiff's pretensions, let us illustrate it by a familiar case.

Take any one of the numerous cases falling within the general act of 1807, *ch.* 52, in which several descents had been cast. Suppose *A*, the purchaser from *H* and wife; and that *H* and wife conveyed to *A*, by a deed defectively acknowledged; that *A* having died, *B*, his heir at law, was challenged by *I*, the heir at law of *H* and wife, and threatened with a suit; and to avoid suit, conveys land or pays money—that *C*, the heir of *B*, is again threatened by *I*, or his heir, and that he too pays peace money, and died leaving the property in the hands of *D*, his heir at law, when the act of 1807 is passed curing the defect in the deed of *H* and wife to *A*; could there be any doubt that the deed of *H* and wife to *A* was the foundation of the title of *A, B, C,* and *D?* If *D* should die intestate, without children, would any question be made, or any difficulty exist, whether the descent was to be traced through the whole line of ancestors to *A?* Certainly not.

It is, therefore, respectfully submitted, that the foundation and origin of the title is the deed of settlement of 1759. That the act of 1787 did not profess, in fact, to divest the title of any other person, and vest it in *Eleanor M. Rozier;* and if it did, that it essayed to do that, which this court will adjudge to have been beyond its constitutional power, and that the act is therefore utterly inoperative.

2. That the possession has followed the deed of settlement from its date in 1759, to the death of *Matthew Tilghman* in 1828.

3. That the deed was confirmed, and any defect in its acknowledgment cured by the act of 1787, to effect which, was the sole object of that act—and also by the terms of the

acts of 1807, *ch.* 52, and 1809, *ch.* 164. From which it follows, that the title derived under the deed to *Eleanor M. Rozier,* by descent, as heir at law to *Thomas W. Rozier,* her father, descended again upon the death of her infant child and heir, and upon the death of her husband, *Matthew Tilghman,* to the plaintiff's lessors, who are the heirs of the said *Eleanor M. Rozier, ex parte paterna,* and who are therefore entitled to the judgment of the court.

*Bullitt* and *W. Carmichael,* for the appellee.

The deed of 1759, though good for the property of the husband, was some years after its execution found to be defective as to the property of the wife—no doubt the wife might have made another deed for her property, and disposed of the same in such way as to her seemed proper; and if she had done so, the appellants might not have obtained the lands now held by them, under the act of assembly, as a compensation for nothing, for they had no title to " *Bennett's Lowe,*" under the deed of 1759. The wife, to whom " *Bennett's Lowe*" belonged, and her friends, under existing circumstances, thought it better, it seems, to apply to the general assembly to make a settlement of her property for them. Application was made to the general assembly, setting forth the deed of 1759 and other facts, and praying that a settlement of her property might be made in a certain way—not that the deed of 1759 should be confirmed. The general assembly assented to the application, and made a settlement of not only all the property mentioned in the deed, but of other lands equal in value to " *Bennett's Lowe.*" The act of assembly operates as an original, independent settlement, and not as a confirmation of the deed, though agreeably to the suggestion of the application, "*Bennett's Lowe*" is substantially disposed of, according to the effect of the deed, had it been good in its creation. We must take the act as we find it. It professes to be an act not to confirm a deed, but an act for vesting an estate for life in *Henry Rozier,* and estates in fee simple in *Eleanor*

*Rozier*, the daughter of *Thomas Whittinghall Rozier*, deceased, and in the heirs of *Notley Rozier*, son of said *Henry Rozier*, in sundry lands therein mentioned. It proceeds to recite several facts set forth in the petition, and declares that the petitioners have prayed that an act may pass for vesting an estate in fee simple, in a moiety of " *Bennett's Lowe*" in *Eleanor Rozier*, &c. It further declares, that the assembly, thinking it just that the settlement intended to be made by *Rozier* and wife as a provision for their children, should take effect—therefore enacts, that an estate in fee simple be, and is hereby vested in *Eleanor Rozier*, of and in the moiety of "*Bennett's Lowe*," &c., provided *Henry Rozier* shall settle lands of equal value on the heirs of *Notley Rozier*. The act says nothing about a confirmation of the deed, but settles certain lands, for the most part, in conformity with the deed, provided *Henry Rozier* shall settle lands of a certain value on the heirs of *Notley Rozier*. There is no provision of this kind in the deed, but the assembly supposing, contrary to the fact, that the heirs of *Notley Rozier* had some right to "*Bennett's Lowe*," determined that they should not be deprived of that right, without full compensation. Nothing is taken from the heirs of *Notley Rozier* by the act, though much is given them, with which it seems they are not content. The act has gone further than the deed, and contains provisions not in the deed; therefore, it is contended that *Eleanor Rozier* took by purchase under the act, and not by descent under the deed. It is asked from whom the purchase was made? It is not necessary to answer the question; there are known to the law two modes of acquiring lands, and two only; that is, by descent and by purchase. If *Eleanor M. Rozier* did not take the land in question by descent from her father, she took it by purchase, under the act of assembly; for it is a well settled rule, that where land is acquired by any means save by descent, it is acquired by purchase. But in this case there was a purchase in fact, through the intervention of the legislature, by

*Henry Rozier*, from the heirs of *Notley Rozier*, for the benefit of the daughter of *Thomas W. Rozier*. *Henry Rozier* gave in exchange lands of equal value with "*Bennett's Lowe*," though the heirs of *Notley Rozier* had no title to the same.

If the act of 1787 did not cure and confirm the deed of 1759, it is contended by the plaintiffs that the general remedial acts of 1807 and 1809 must have that effect. The act of 1787 did not operate on the deed, but upon the subject matter of the deed. The act made a settlement of the lands contained in the deed, agreeably to the prayer of the petition, substantially in conformity with the deed, and did more, that is, it required a settlement of other lands.

Can it be supposed that the acts of 1807 and 1809 intended to repeal the act of 1787, and make void the settlement thereby established? I think not. These remedial acts were intended only to confirm deeds, upon which no action had taken place, and these acts certainly take property from one and give it to another. These acts are not considered a violation of the constitution. The act of 1787 takes nothing from the heirs of *Notley Rozier*, but gives them more than they ought to have; and, therefore, cannot be a violation of the constitution. The deed is also within the exceptions of the two acts. Possession is relied on; it proves nothing. *Neale* possessed to the day of his death; he had a right to do so, as tenant by the courtesy. *Henry Rozier* also possessed until the date of his deed to his grand-daughter. He also had the right to do so, as tenant by the courtesy. It does not appear then that either possessed under the deed, as they had the right to possess, had there been no deed. The truth no doubt is, that *Neale* possessed as tenant by the courtesy, and *Henry Rozier* possessed under the deed, until it was found to be defective; and then possessed under the act of 1787; and all others possessed under that act.

The heirs of *Notley Rozier* have for many years acquiesced in the settlement made by the act of 1787; have held

and enjoyed the land given to them as a compensation for "*Bennett's Lowe,*" and still hold and enjoy the same, whereby they have confirmed that settlement. They referred in the argument to 1 *Harr. and Johns.* 291, 513. 2 *Ib.* 62, 230. 1 *Atk.* 489. 3 *Burr.* 1794. 2 *Vern.* 275. 2 *Black. Com.* 201, 241. 4 *Harr. and Johns.* 245. The *acts of* 1807, *ch.* 52; *and* 1809, *ch.* 164. *Hob.* 173. *Cro. Jac.* 481. 1 *H. Black.* 65.

DORSEY, J., delivered the opinion of the court.

The argument on both sides concedes, that the deed of 1759 (by reason of the insufficiency of the acknowledgment thereof) unsupported by any subsequent legislation, was insufficient to pass such interest in the real estate in question, as resided in the *feme-covert* grantor, *Eleanor Rozier,* at the time of its execution. But it is insisted by the appellant's counsel, that this defect is cured by the act of the general assembly of *Maryland,* passed at April session, 1787, *ch.* 19, which it is alleged was enacted for the remedy thereof, and for no other purpose; and that the sole object of the applicants for this law, and of the legislature in passing it, was the passage of an act confirmatory of the deed of 1759, and the giving it the same effect and operation as if the acknowledgment of its grantors had been taken according to the form prescribed by law. If we could be convinced that such was the design of the legislature, it must be carried into effect. But their intention must be ascertained, not by remote inferences or vague conjecture, but collected from the nature of the application made to them, and the terms they have used in granting it. Of the contents of the petition presented to the general assembly, we have no knowledge, but as they are recited in the preamble to the laws, which states that the petition set forth, not the fact that the deed of 1759 was inoperative or insufficient, by reason of the informality in the acknowledgment of the *feme covert,* and prayed for the passage of an act curing that defect, and giving to the deed the same

operation as if it had been obnoxious to no such objection ; but after detailing the provisions of the deed, states, that the petitioners conceiving the deed of bargain and sale so executed insufficient in law for settling the lands according to the purposes therein mentioned, have prayed that an act may pass for vesting an estate in fee simple in the said moiety of the land called *"Bennett's Lowe,"* in the said *Eleanor*, the daughter of the said *Thomas W. Rozier*, subject to an estate for life in the same, in the said *Henry Rozier*, the father; and after his death, to the dower of the said *Eleanor Rozier*, the younger, the mother of the said infant daughter, and also for vesting an estate in fee simple in the said tracts of land called *"Aquonsick,"* and *"Aquonsick Enlarged,"* in the heirs of the said *Notley Rozier*, deceased, the eldest son of the petitioners, *Henry Rozier*, and *Eleanor*, his wife. In this petition, as inserted in the preamble of the act of assembly, there is not one word or expression distinctly intimating that the petitioners were aware of the insufficiency of the acknowledgment to the deed ; not the slightest intimation of a wish for the passage of a law curing such defect, and confirmatory of the deed. From the circumstances before us, to impute to them such knowledge, and such a design, appears to us irrational in the extreme. If cognizant of the inadequacy of the acknowledgment of the *feme covert* to pass her estate, they as well as the general assembly, *ex natura rei*, knew that the property remained in her ; and that she and her husband, without any legislative auxiliary interposition, could at any moment execute a new deed, conveying the same according to their wishes. Possessed of such knowledge, can it for one moment be believed, that the petitioners would have put themselves to the trouble of applying to the legislature on the subject. Nay—would they have listened under such circumstances to the exorbitant, unaccountable, and oppressive condition, imposed by the legislature, that lands of equal value with the moiety of *" Bennett's Lowe,"* should be conveyed by *Henry Rozier* to

*Notley Rozier's* heirs, before the deed of settlement should be confirmed? Can it be supposed if this were the informality to be rectified, that where the petitioners, *proprio jure*, had all the right and power necessary to do that, for which they asked the legislative sanction, that when they offered to settle upon *Notley Rozier's* heirs, more than one thousand acres of land, and contrary to the tenor of their deed, to relinquish *Henry Rozier's* life estate therein, that the legislature of *Maryland*, whilst they sanctioned without scruple or restriction, the proposed settlement on *Notley Rozier's* heirs, would have imposed on the petitioners, the extravagant and unreasonable condition, that their assent to the settlement on *Thomas W. Rozier's* infant heir was only given, provided an additional settlement of lands of equal value with that made on *Thomas W. Rozier's* heirs were added to the settlement proposed to be made on *Notley Rozier's* heirs.

According to the petition, *Henry Rozier* and *Eleanor* his wife, in right of the said *Eleanor*, were entitled to the tracts of land called *Aquonsick* and *Aquonsick Enlarged*, and a moiety of the tract of land called *Bennett's Lowe*, and by their deed of settlement of 1759 had, reserving the life estate of *Henry Rozier*, attempted to convey the two first mentioned tracts to their son *Henry Rozier* in fee, with a limitation over on a contingency, which never happened, and the moiety of *Bennett's Lowe*, after a like life estate, to their son *Edward Rozier* in fee, with a limitation over in fee, to their son *Thomas W. Rozier*, on a contingency which did happen; and according to the assumptions of the defendants' counsel, this conveyance was wholly inoperative, by reason of the informality of the acknowledgment of *Eleanor Rozier*, the mother; her right to, and controul over these lands remaining unimpaired, and with a perfect knowledge of these facts, and their rights, the petitioners applied to the general assembly to give their sanction and confirmation of this deed. If the legislature were willing to act in such a case, as it appears they were, could they as far

as *Notley Rozier's* heirs were concerned, have hesitated for a moment to ratify the settlement upon the terms proposed by the petitioners? The property all belonged to *Henry Rozier* and wife; they prayed that it might pass to their descendants, in accordance with their deed of settlement, executed nearly thirty years before, except that *Henry Rozier* voluntarily relinquished his life estate, reserved by the deed in *Aquonsick* and *Aquonsick Enlarged,* the lands which had descended to the heirs of *Notley Rozier,* had the deed been of any validity, and which it was the design of the petitioners to settle upon them. Could the legislature have objected to the natural justice and equity of the settlement proposed? Could they, under such circumstances, have sought to impose other terms upon the petitioners than those which the petitioners offered? It is impossible to believe it. But the legislature did impose her terms. Whilst they confirmed all the bountiful intentions of the petitioners towards the heirs of *Notley Rozier,* they refused their sanction to those in favor of the heir of *Thomas W. Rozier*—but upon the inconsistent, unreasonable condition, that *Henry Rozier,* the father, should first convey to *Notley Rozier's* heirs land of equal value with the moiety of *Bennett's Lowe.* The inference is irresistible; the legislature did not act on that state of facts which has been assumed on the part of the appellants.

They did not legislate to cure a mere informality in a *feme covert's* acknowledgment of a deed, where the right of property still remained in the grantors, who were competent and anxious to give validity to the deed; but they conceived they were called upon to cure, not an informality in the execution of the deed, but an informality or defect in the body of the deed, which has been so drawn as not to effectuate the intention of the grantors; a defect incurable but by legislative interposition. They believed that the limitation over to *Thomas W. Rozier,* his heirs, by a defect in the form of drawing the deed, had failed to take effect, and that the moiety of *Bennett's Lowe* had vested in

*Notley Rozier,* as heir at law of *Edward Rozier ;* and such were the impressions of the petitioners, or they never would have troubled the legislature upon the subject, or submitted to the unjust and unconscientious condition imposed on them by the act of assembly.   And this condition is undeniably proved by the concluding words of the proviso to the act, which states, "that the said *Henry Rozier* shall, under the direction of the Chancellor, settle lands of equal value with the moiety of the said tract of land called *Bennett's Lowe,* on the heirs of *Notley Rozier,* deceased, in the same manner, and with the same limitations, that the heirs of the said *Notley Rozier,* deceased, now hold the aforesaid moiety of the said tract of land called *Bennett's Lowe.*   If the defect to be cured was in the acknowledgment of the deed, the right of property would have continued in the *feme covert,* without any pretence of title in *Notley Rozier's* heirs ; consequently, the heirs of *Notley Rozier,* taking no other interest in the lands of equivalent value, than they held in the moiety of *Bennett's Lowe,* would, according to the terms of the act of assembly, have acquired nothing by the conveyance executed under the direction of the Chancellor.   At all events, this clause in the act of assembly demonstrates that the design of the legislature was not merely to cure a defective acknowledgment—to aid *Eleanor Rozier* to settle her property upon her descendants according to her wishes ; but to *divest* the heirs of *Notley Rozier* of a moiety of *Bennett's Lowe,* (which the law assumes that they then held,) and to invest the fee simple in the same in the daughter of *Thomas W. Rozier.*   No other rational interposition can be given to this act of assembly.

The petition to the legislature does not pray for a confirmation, or curing the defective deed from *Henry Rozier,* and *Eleanor* his wife, to *Edward Neale.*   The legislature in their preamble, do not say that any confirmatory act ought to pass ; but that, " this assembly thinking it just and reasonable, that the settlement intended to be made by the

said *Henry Rozier*, the father, and *Eleanor*, his wife, as a provision for their children should take effect, any informalities in the said deed notwithstanding." Therefore, be it enacted, &c.; giving estates, not such as the deed gave, but such as the act of assembly prescribed, corresponding, or consistent for the most part, with those intended to have been given by the deed, but differing from them in some essential particulars ; no estate was to pass to *Eleanor Rozier*, the grand-daughter of the grantors, until its full value had passed to the heirs of *Notley Rozier*, by the conveyance to them of the other lands by *Henry Rozier ;* thus giving to the transaction the character of a purchase or exchange of lands by the grand-father for the benefit of the grand-daughter ; the legislature authorizing the transfer (after full consideration shall have been received,) of the lands of the infant heirs of *Notley Rozier*, made under the judicial sanction of the appropriate guardian of their rights, a court of Chancery ; nay, so studious were the legislature in securing an ample indemnity to the infant heirs of *Notley Rozier*, that by the terms on which their divesture of the moiety of *Bennett's Lowe* took place, they were not only indemnified by the conveyance of lands of equal value, but in addition thereto, were relieved from *Henry Rozier's* life estate in *Aquonsick* and *Aquonsick Enlarged ;* thus receiving, most probably, at least one-third more than the value of the property which it was contemplated should pass from them by this legislative exchange. When the legislature say, that the settlement intended to be made by *Henry Rozier*, and *Eleanor*, his wife, ought to be carried into effect, they do not mean, that the deed ought to be confirmed, but that the property therein mentioned ought to pass in the manner set forth in the deed.    The settlement intended, and the deed executed for its accomplishment, are separate and distinct things.    The deed might be abandoned or annulled, and yet in the language of the general assembly, the settlement intended ought to be

carried into effect: it might be effectuated by an independent deed or by legislative enactment.

The act of 1787 is not confirmatory of the entire settlement in the deed of 1759, because it takes from *Henry Rozier* the life estate thereby secured to him in the tracts of land called *Aquonsick* and *Aquonsick Enlarged*, and gives an estate of dower in the moiety of *Bennett's Lowe* to *Thomas W. Rozier's* widow, to which, under the deed, she was not entitled ; neither is it a simple confirmation of that part of the deed by which a moiety of *Bennett's Lowe* was intended to be conveyed to *Eleanor Rozier*, the granddaughter of the grantors, because it fixes upon it a dower right, not derived under the deed. Had the petitioners, as contended, merely sought the passage of an act curing the defective acknowledgment of the deed, their wishes would have been distinctly avowed in their petition. Had the legislature designed to grant such an application to pass a mere confirmatory law, they would have used appropriate terms to express such, their intention. All prior and subsequent applications, and legislation upon such subjects, demonstrate this fact. There was no reason for making it an act of confirmation ; every presumable object of the *general assembly*, and of the petitioners, would have been as effectually accomplished by the act, if not deemed confirmatory, as if it were so regarded. Nay, if it be viewed as a mere confirmatory act, the design of the petitioners would not be fully gratified. *Thomas W. Rozier's* widow, in that case, would not be endowed ; but looking to the act of assembly as of that independent character, which upon its face it purports to be, every object that the parties interested or the legislature could be presumed to have anticipated, was fully gratified. It gave to *Henry Rozier* the faculty of investing a fee simple estate in his grand-daughter in a moiety of *Bennett's Lowe*, upon the terms and conditions on which it was asked for, with the further condition imposed by the legislature.

The supposed informality which caused the petition to the legislature, and to remedy which, they consented to lend it their aid, was in all probability the offspring of a misconception of the legal effect and operation of the deed of 1759.  Applying it to the principle applicable to common law conveyances, that a fee cannot be limited upon fee—that such a limitation over is void—and that the entire estate vests absolutely in the first takers, the petitioners and the general assembly appear to have acted under the impression that the grant to *Henry Rozier* vested in him the entire property,—that the conditional limitations over to *Thomas W. Rozier* and his heirs was wholly inoperative; and consequently, that upon the death of *Edward Rozier* without issue, the fee in the moiety of *Bennett's Lowe* was cast by descent upon the heirs of *Notley Rozier*.  To correct this imaginary frustration of the intention of the grantors, under the deed of 1759, was as well the object of the petitioners as of the *general assembly*.  Whether if the rights of the parties had been as they were assumed to be, the legislative enactments of 1787 were nugatory and void; as an unauthorized usurpation of a power denied to the legislature, upon principles of common right or constitutional restriction, is a question which the views we have taken of this case render it unnecessary for us to consider.  The title of the property, by reason of the defective acknowledgment remaining in the petitioners, it was unquestionably competent for the legislature, at their request, to settle it in the mode prescribed by the act of assembly.

But it is alleged, that by the curing acts of 1807 and 1809, the property in question is made to pass under the deed of 1759, in the same manner as if the acknowledgment stood free from all exception, and the act of 1787 had never passed.  Such was not the design of the general assembly in their enactments of 1807 and 1809.  They had previously settled the rights of the parties to the property in dispute, by the most solemn legislative sanctions, and nothing was

farther from their intentions than to disturb the settlement thus made, or legislate in reference to the deed embracing the property thus disposed of,—even if the case were included within the letter of those enactments, being without their spirit, it would not be embraced by them.

**JUDGMENT AFFIRMED.**